Good morning. My name is Steve Rawls and I represent Mr. Leon-Hernandez. Mr. Leon-Hernandez was convicted of two counts of a five-count indictment, acquitted of two counts, and one count was dismissed by the prosecution in the middle of trial. There were three errors that were presented to this court, and two of those errors, which we erased, this is whether or not the district court should have granted our motion for mistrial after the two errors, which we believe two errors were committed. The third one involved the district court not allowing us to explain the relationship that Leon-Hernandez had with the government's chief witness, an individual by the name of Jose Colon. Let me address the first argument, and that being the testimony of Jose Colon. Jose Colon was basically the primary witness that the government called in this case against Mr. Leon-Hernandez. His testimony was basically speculative as to the involvement that Mr. Leon-Hernandez had. During the course of the direct examination, defense counsel made numerous objections to the speculative nature of the testimony. Sidebar was had. The government was directed to lay foundation as to how the government's main witness knew that the defendant in this case, Leon-Hernandez, was involved. The government's response was maybe we can't lay the foundation. Continuation of the direct examination was made. Again, the government was not able to lay foundation to establish the relationship of Leon-Hernandez to the crime itself. Counsel, the difficulty I have with your argument is that the court gave a curative instruction. It did at that, Judge. But the problem is if you look at the amount of testimony the government's witness had given at that point in time, it was pretty substantial. And there were a lot of inferences that could have been drawn from that. And if you look at what Mr. Leon-Hernandez was subsequently convicted of, it's pretty clear that the jury could have used a lot of the information that witness Colon gave in making a determination as to whether or not the jury should accept Mr. Leon-Hernandez's testimony that he gave. And I think that basically what happened in this situation became a swearing contest. Well, counsel, didn't that testimony go primarily to the conspiracy charge? It did. And wasn't he acquitted of the conspiracy charge? He was. But that testimony also went to counts two through five, because it talked about facts that underlied the subsequent convictions of count four and count five. And doesn't our case authority say that if there's a split verdict, that kind of lends itself to the theory that the jury did understand the instructions, followed the instructions and applied them in a discriminating fashion? Well, there is a presumption that the jurors will follow the instructions. But when you look at the subsequent testimony that was stricken from the record by the district court, at some point you begin to question whether or not the jury is presumed or will follow that presumption concerning the instructions that are given to it. If you look at the testimony that was stricken by the district court involving 608B or 607, or I'm not even sure what it was that the government was arguing there, that testimony was pretty substantial. That testimony went to the heart of the credibility of Mr. Leone Hernandez. It went to the intent. It went to the knowledge. Those were the issues that the jury subsequently made a determination of, because if you look at what he was convicted of, he was convicted of aiding and abetting on count five. And the elements that were important on this is whether or not he intentionally or knowingly assisted in the movement of the one illegal alien. And I think that's where, if you say that the jury instruction was sufficient and the jury followed the instruction on Jose Colón, you can't make the same assessment and say that it also applied on the stricken testimony of the two witnesses at the very end of the trial. You mean the 9-11 witnesses? Right. Yes, ma'am. Counsel, don't we have to look at this in light of the other evidence that was admitted to support the jury's verdict? Well, you have to look at all the evidence on this case. And like I said, it became a swearing contest. Between whom? Between the defense witnesses and the prosecution's agents. Isn't that always the case? Well, it is always the case. I agree with you there. But when you introduce evidence into the case which is subsequently excluded and that evidence went towards the prosecution's case, don't they have an unfair advantage at that point in time where if you begin to weigh, you know, this side being the prosecution's side and this side being the defense's side and all things being equal, you add the prejudice over here, this becomes a lot weightier. And this is what we're talking about. We're talking about whether or not that prejudicial evidence that was subsequently stricken became that. Don't you end up suggesting that we ignore the presumption that the jury follows the instructions? Judge, it's only ‑‑ it's a presumption. Right. It's a presumption. Sure. But you're not even taking the presumption. You're just saying, well, it went in. It shouldn't have gone in. You win. Isn't there more to it than that? No. You know, it's not that cut and dry. You know, there has to come a point in time where the prejudice of that evidence that was stricken becomes a factor, especially in a situation in which you have the issue of credibility of the defendant in place here. Now, the two individuals that testified at the tail end were two police officers. The two police officers had nothing to do with this investigation, and they spoke about the 9-11 calls or the one 9-11 call that was supposed to have taken place approximately two years prior to this incident. That had no relevance at all other than to try to impeach the testimony of the ‑‑ That's clearly what it was put in for. I'm sorry? That's clearly what it was put in for. Oh, absolutely. Absolutely. And this is why I'm saying it was put in for an unreasonable ‑‑ No, credibility is always on the table. Well, but the reason that that was put in was unfair. You know, it shouldn't have ever come in. If you look at the ‑‑ Well, he said he had called 9-11. Right. They said he had not. Right. Clearly a credibility problem. Right. And the court said, well, it was probably more prejudicial than probative and shouldn't have come in. Not that it was off the subject. You know, just said, well, looking at it now, it probably shouldn't have come in. It wasn't totally off the wall. Well, you know, I disagree. I disagree. Because if you look what took place prior to that time, you know, the government's counsel refused to tell the court why they were bringing this information in. It's in the record there. The court asked government's counsel, why are you bringing it in, and government's counsel says, I don't have to tell you. I told the court, I believe it's coming in under 608B. The court allowed that to come in. Why should the government be rewarded for allowing evidence into the record that is subsequently stricken? Well, does the government have to identify rebuttal evidence before the need for that evidence becomes obvious? They don't have to identify it unless there's a problem with it. Okay. Fairness dictates that the court should be allowed to rule on issues that may become problematic to the trial. This authority, are you relying upon to support your assertion that seemingly problematic issues have to be ruled on by the court before the law requires that? Well, I can't tell you that I'm relying. I'm just talking about the whether or not there's a responsibility by the government or by any lawyer in the court to say, look, you know, we've got a problem coming up here. There's this issue. You contrast that to why hide it. Now, I know what you're saying. You're saying, you know, why should the government have to disclose this? Well, they should have disclosed it because it was an area that became very problematic and... I understand, counsel, but there's a difference between what should be done in the ideal State and what the law requires. And I think you're asking us to rule on what ideally should be required rather than what the law requires. Well, that's really not the thrust of my argument today, that they should have told the judge. I'm saying that it was preplanned. Okay. When the judge asks, you know, why are you bringing this in, and the government counsel says, I don't have to tell you, I think there's something amiss there. Are you making a claim of prosecutorial misconduct? Well, no, I'm not, because like you say, I don't have any case law or authority to say that. But if you look at what took place in this trial, you can have an inference of that. You look at the Border Patrol agents that came in and testified. They all testified, asked for certain things taking place, which became very innocuous. In cross-examination, the things that they said were evidence and lended support to some kind of a sinister act on the part of Mr. Dillon turned out to be very innocuous. All right, counsel, you've exceeded your time. I'm sorry, Judge. We understand your argument, but we will give you a minute for rebuttal. Thank you. May it please the Court. My name is Bruce Ferg, assistant United States attorney from the District of Arizona on behalf of the government. There are essentially three different evidentiary issues that have been presented by the briefs, and I'll just go through those very quickly, ultimately pointing out that there were curative instructions given, and also the whole issue was revisited after the trial by the district court judge in response to a motion for a new trial, and she determined that even cumulatively, looking at everything that happened in the trial, there was no basis for a new trial motion. So we begin with the fact that the standard of review is the discretion of the trial court, the one who is sitting there hearing a testimony, seeing how the jurors reacting, and going from there. The first issue was the testimony by Mr. Colon, which turned out, as was presented, to be rather different from what he had been saying in the interviews and his change of plea colloquy that the prosecutor at the trial had heard. Did you try this case, counsel? No, ma'am, I didn't. A fellow named Jeff Jacobson did, but I'm the appellate fellow who comes in. After the fact. Yes, ma'am. Basically what happened here was that Mr. Colon got up and started testifying, and he was expressing himself in terms of I think or I believe. So, actually, it was speculative, but it was clearly speculative. If we give the jurors any credit at all, they were seeing that, at least as it was being presented to trial, this was not firsthand knowledge, and were able to give it as little credit as it was due at that point. But more than that, as has already been pointed out, the Court struck that testimony, specifically instructed the jurors, you are not to consider any of this speculative material. And that was reinforced by the standard instructions about how evidence is to be assessed given at the end of the trial. And we can tell from the record that, in fact, the jurors followed those instructions, because what did they do? First of all, they completely acquitted on count one, which was the conspiracy count, to which most of Mr. Colon's speculative testimony went. But it's interesting to note that with regard to the interrogatories about pecuniary gain or monetary receipt, even on counts three and five, on which they convicted, they rejected that. And so to the extent that there was even speculative testimony from Mr. Colon, well, I got paid, so I'm assuming that the defendant got paid, they very carefully extricated that testimony, put it aside, and only convicted on the very basic charges of harboring and of transportation. Counsel, what's your response to opposing counsel's point that the testimony went to the credibility of the defendant, which was crucial in this case? Well, as was pointed out, credibility is always on the table. But the most important thing here, and it goes along with the effectiveness of the curative instructions, is that there was very substantial independent evidence, quite aside from Mr. Colon, which supported the verdicts on which the ‑‑ on the counts on which the defendant actually was convicted. Most particularly, there is a testimony of the one material witness who was the subject of counts three and five, and which is almost ignored in the briefs. But basically that testimony, which is taken by video deposition, was read back for the jury. And he specifically said that the coyote, that the guy brought them across the border and took them to this particular house. Had to go back through some back alleys and so forth. And then the guide knocked on a particular window in this particular house and told the person inside, the people are here. Then who comes out? A balding person. Did anyone ever specifically identify the defendant as that person who came from the house? Because the material witness was actually deposed and then allowed to leave, he was not at the trial. And so there was not that kind of an eyewitness identification done. But to the extent that the only person who was living in the house who was an elderly balding man was a defendant, and it correlates with his own wife's testimony about having heard a sound on the window he went outside, the conglomeration of evidence clearly identifies the defendant as being the one who did this. He then comes out of the house in response to this whispered message from the guide, takes the people around to the front of the house and directs them specifically to these abandoned cars in front of the property where they stay overnight. Then at about 5 o'clock in the morning, when it is still dark, he comes out and starts pacing up and down. And lo and behold, with total coincidence, here comes the white van to pick them up. Then we have testimony, and it's specifically about one of the surveilling agents, that this balding man, the same balding man who was the only one living in the house, directed the people into the van in the backyard, opened the van door, closed the van door. So we have essentially eyewitness testimony supporting the counts on which he was convicted, that he was directly involved in placing them in the van, which then left and was stopped down the road by the border patrol. So we have very substantial evidence. It's quite a part. As far as the counts on which he was convicted, Mr. Colon really had to be irrelevant because of all of the evidence from the material witness and the surveilling agents and the corroboration from even the defendant's own wife about what had happened during the night, that there had been this sound to which the defendant had responded. Kennedy. Counsel, the defendant testified. What was it that the trial court would not allow him to testify as to his relationship with Colon? He desired to indicate that on one of the prior occasions on which he had met Mr. Colon, he, the defendant, had told Colon, oh, you can come by the house and park your vehicle there any time. The whole idea being to dispel the appearance of a conspiracy, that this was, you know, a whole pattern of transportation. What was it that was excluded and why? Because the only one who was going to testify to that was the defendant himself. It was basically self-serving. He was trying to give hearsay about what he had said on another occasion months before, and it fit none of the hearsay exceptions. He offered that it was the testimony of a party opponent, but obviously he was not going to testify. But his relationship with Colon was very important on the issues of this trial. I don't understand the hearsay. Well, it's hearsay because it was out-of-court speech which was offered for the truth of it. And it didn't fit within any of the hearsay exceptions, nor did he demonstrate to the satisfaction of the defense. But he intended to prove his relationship with Colon. It was relevant. It was a very important issue in this case, as I understand it. It was potentially relevant, but it didn't fit within the hearsay rule. And so. It would have been the way I ruled. Go ahead. So that was essentially the reason why it was excluded. But once again, even if you assume that that hearsay ruling was improper, then we still have the fact that the only counts on which he was actually convicted were the ones to which we had the material witness testifying directly. And therefore, the. It also went to the effect of Colon's testimony. Which. As to whether he thought the defendant was arranging to do this. Which, with all due respect, basically became irrelevant when you had testimony such as from the agent that the balding man actually opened the van door, ushered the aliens into it, and closed the van door. I mean, here is direct participation, which was contrary to what the defendant himself testified to. He claimed, oh, no, I had nothing to do with the van. I was in my truck and off to work. Counsel was. Mr. Colon asked the question about whether or not he had sought permission to park in the defendant's yard when he came into that vicinity. No, ma'am, he was not. He was cross-examined. He was available. But for whatever reason, Mr. Rawls did not ask him that particular question, which I can conceive of a nonhearsay way to get that in, because if you're talking about offered not for the truth but for the effect on the hearer, then it's possible that it could have been properly admitted on the examination of Mr. Colon, but the question was not asked by the defense. The only way it was attempted to be offered was as hearsay through the defendant himself. As far as the overall issue of the rebuttal testimony, we are the – there is a colorable argument that it was, in fact, properly admitted in the first place and that in her backing and forwarding about the admissibility of it, the district court judge actually ended up giving a curative instruction and striking it when it was not necessary. But the bottom line is that whether or not it was admissible to begin with, it clearly was not prejudicial because of much the same kinds of factors we've talked about, strong independent evidence, a curative instruction, and ultimately the defendant was convicted only on counts which would not have been affected. All right. Thank you, counsel. We'll give one minute for rebuttal. All right. Thank you, counsel. Thank you to both counsel. The case just argued is submitted for decision by the Court. The next case on calendar for argument is United States v. Lind. Thank you.
judges: Reavley, T.G. Nelson, Rawlinson